# Exhibit B

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MAX C. FELDMAN, INDIVIDUALLY
and AS TRUSTEE ON BEHALF OF THE
MAX C. FELDMAN DEFINED BENEFIT
PENSION PLAN,

        Plaintiff

    v.

NATIONAL BENEFITS NETWORK,
INC., SCOTT IVOL FINANCIAL GROUP,
LLC, SCOTT C. IVOL,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, TALCOTT
RESOLUTION LIFE AND ANNUITY
INSURANCE COMPANY,  ALLIANZ
LIFE INSURANCE COMPANY OF
NORTH AMERICA, JACKSON
NATIONAL LIFE INSURANCE
COMPANY, BRIGHTHOUSE LIFE
INSURANCE COMPANY, AND MONY
LIFE INSURANCE COMPANY,

        Defendants.

**JURY TRIAL IS DEMANDED.**

CIVIL DIVISION

Case No.:  GD-20-000487

**COMPLAINT IN CIVIL ACTION**

Code:  009

Filed on behalf of:

Plaintiff, Max C. Feldman, individually and as
Trustee on Behalf of the Max C. Feldman
Defined Benefit Pension Plan

Counsel of Record for this Party:

Robert M. Barnes, Esq.
PA I.D. No. 58655
rbarnes@marcus-shapira.com
MARCUS & SHAPIRA, LLP
Firm I.D. #145
301 Grant Street, 35th Floor
Pittsburgh, PA  15219
Telephone:  (412) 471-3490

Laura R. Sherry, Esq.
*Pro Hac Vice Admission Pending*
laura@harrisfirmpc.com
The Harris Firm
5050 West Lovers Lane
Dallas, TX  75209
Telephone: (214) 956-7474

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MAX C. FELDMAN, INDIVIDUALLY
and AS TRUSTEE ON BEHALF OF THE
MAX C. FELDMAN DEFINED BENEFIT
PENSION PLAN,

        Plaintiff

    v.

NATIONAL BENEFITS NETWORK,
INC., SCOTT IVOL FINANCIAL GROUP,
LLC, SCOTT C. IVOL,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, TALCOTT
RESOLUTION LIFE AND ANNUITY
INSURANCE COMPANY,  ALLIANZ
LIFE INSURANCE COMPANY OF
NORTH AMERICA, JACKSON
NATIONAL LIFE INSURANCE
COMPANY, BRIGHTHOUSE LIFE
INSURANCE COMPANY, AND MONY
LIFE INSURANCE COMPANY,

        Defendants.

CIVIL DIVISION

Case No.:  GD-20-000487

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA  15219
(412) 261-5555


/s/ Robert M. Barnes
Robert M. Barnes, Esq.
MARCUS & SHAPIRA LLP
301 Grant Street, 35th Floor
Pittsburgh, PA  15219
(412) 471-3490

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MAX C. FELDMAN, INDIVIDUALLY                CIVIL DIVISION
and AS TRUSTEE ON BEHALF OF THE
MAX C. FELDMAN DEFINED BENEFIT            Case No.:  GD-20-000487
PENSION PLAN,

       Plaintiff

   v.

NATIONAL BENEFITS NETWORK,
INC., SCOTT IVOL FINANCIAL GROUP,
LLC, SCOTT C. IVOL,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, TALCOTT
RESOLUTION LIFE AND ANNUITY
INSURANCE COMPANY,  ALLIANZ
LIFE INSURANCE COMPANY OF
NORTH AMERICA, JACKSON
NATIONAL LIFE INSURANCE
COMPANY, BRIGHTHOUSE LIFE
INSURANCE COMPANY, AND MONY
LIFE INSURANCE COMPANY,

       Defendants.


## COMPLAINT IN CIVIL ACTION

COMES NOW, **MAX FELDMAN, INDIVIDUALLY AND AS TRUSTEE ON BEHALF OF THE MAX C. FELDMAN DEFINED BENEFIT PENSION PLAN,** and hereby files this Complaint in Civil Action against Defendants **NATIONAL BENEFITS NETWORK, INC., SCOTT IVOL FINANCIAL GROUP, LLC, SCOTT C. IVOL, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, TALCOTT RESOLUTION LIFE AND ANNUITY INSURANCE COMPANY, ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, JACKSON NATIONAL LIFE INSURANCE COMPANY, BRIGHTHOUSE LIFE INSURANCE COMPANY, AND**

**MONY LIFE INSURANCE COMPANY** (collectively "Defendants"), and would show unto the Court the following:

## I.
## PARTIES

### A.    PLAINTIFF

1.     Plaintiff Max Feldman is an individual residing in Pennsylvania.

### B.    DEFENDANTS

2.     Defendant National Benefits Network, Inc. is corporation duly organized under the laws of the State of Pennsylvania and can be served as follows:

National Benefits Network, Inc.
71 McMurray Road, #207
Pittsburgh, PA  15241

3.     Defendant Scott Ivol Financial Group, LLC is limited liability company duly organized under the laws of the State of Pennsylvania and can be served as follows:

Scott Ivol Financial Group, LLC
37 McMurray Rd.
Pittsburgh, PA  15241

4.     Defendant Scott Ivol is an individual citizen domiciled in the State of Pennsylvania and can be served as follows:

Scott C. Ivol
1813 Tilton Drive
Pittsburgh, PA  15241

5.     Defendant Massachusetts Mutual Life Insurance Company is an insurance company organized under the laws of the State of Massachusetts.  Massachusetts Mutual Life Insurance Company has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims.  Massachusetts Mutual Life Insurance Company can be served as follows:

Massachusetts Mutual Life Insurance Company
1295 State Street

Springfield, MA  01111

6.     Defendant Talcott Resolution Life and Annuity Insurance Company is an insurance company organized under the laws of the State of Connecticut.  As background, during the relevant time frame, Talcott Resolution Life and Annuity Insurance Company was under the control of The Hartford – Hartford Life and Annuity Insurance Company.  Talcott Resolution Life and Annuity Insurance Company subsequently benefited from and ratified the actions of The Hartford – Hartford life and Annuity Insurance Company.  Talcott Resolution Life and Annuity Insurance Company has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims.  Talcott Resolution Life and Annuity Insurance Company can be served as follows:

Talcott Resolution Life and Annuity Insurance Company
1 Griffin Road North
Windsor, CT  06095

7.     Defendant Allianz Life Insurance Company of North America is an insurance company organized under the laws of the State of Minnesota.  Allianz Life Insurance Company of North America has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims.  Allianz Life Insurance Company of North America can be served as follows:

Allianz Life Insurance Company of North America
5701 Golden Hills Drive
Minneapolis, MN  55416

8.     Defendant Jackson National Life Insurance Company is an insurance company organized under the laws of the State of Michigan.  Jackson National Life Insurance Company has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims.  Jackson National Life Insurance Company can be served as follows:

Jackson National Life Insurance Company
5701 Golden Hills Drive
Minneapolis, MN  55416

9.     Defendant Brighthouse Life Insurance Company is an insurance company organized under the laws of the State of Delaware.  As background, during the relevant time frame, Brighthouse Life Insurance Company was MetLife Insurance Company USA. Brighthouse Life Insurance Company subsequently benefited from and ratified the actions of MetLife Insurance Company USA.  Brighthouse Life Insurance Company has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims. Brighthouse Life Insurance Company can be served as follows:

Brighthouse Life Insurance Company
1209 Orange Street
Wilmington, DE  19801

10.     Defendant MONY Life Insurance Company is an insurance company organized under the laws of the State of New York.  MONY Life Insurance Company has done business in and committed torts in the State of Pennsylvania which give rise to Plaintiff's claims.  MONY Life Insurance Company can be served as follows:

MONY Life Insurance Company
1291 Avenue of the Americas
New York, NY  10104

## C.     AGENCY

11.     Unless otherwise stated herein, whenever it is alleged in this pleading that National Benefits Network, Inc. committed an act, made a representation or statement, failed to perform an act, or failed to make a statement, it means that Defendant National Benefits Network, Inc. was acting or failing to act through its authorized agents, partners and/or employees, including but not limited to Bruce Ivol and Scott Ivol, who were acting with either express, implied, apparent and/or ostensible authority and that Defendant National Benefits Network, Inc. subsequently ratified and benefited financially from these acts, failures to act, representations, statements or conduct.

12.     Unless otherwise stated herein, whenever it is alleged in this pleading that Scott Ivol Financial Group, LLC committed an act, made a representation or statement, failed to perform an act, or failed to make a statement, it means that Defendant Scott Ivol Financial Group, LLC was acting or failing to act through its authorized agents, partners and/or employees, including but not limited to Scott Ivol, who was acting with either express, implied, apparent and/or ostensible authority and that Defendant Scott Ivol Financial Group, LLC subsequently ratified and benefited financially from these acts, failures to act, representations, statements or conduct.

13.     Bruce Ivol was also acting as the agent of various insurance companies, including Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, whose products he sold and who paid him a commission.  Bruce Ivol was acting with either express, implied, apparent and/or ostensible authority and Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, subsequently ratified and benefited financially from these acts, failures to act, representations, statements or conduct.  Bruce Ivol not only solicited insurance on behalf of these companies, but also transmitted insurance applications and assisted in the collection of premiums for the insurance companies.

14.     Scott Ivol was also acting as the agent of various insurance companies, including Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, whose products he sold and who paid him a commission.  Scott Ivol was acting with either express,

implied, apparent and/or ostensible authority and Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, subsequently ratified and benefited financially from these acts, failures to act, representations, statements or conduct.  Scott Ivol not only solicited insurance on behalf of these companies, but also transmitted insurance applications and assisted in the collection of premiums for the insurance companies.

15.      Each of the Defendants aided and abetted each other in committing the causes of actions alleged.  Each of the Defendants was a co-conspirator, and knowingly aided and abetted the wrongful acts of each other.  Each of the Defendants was a cog in the machine that induced Plaintiff into the Max C. Feldman Defined Benefit Pension Plan (hereinafter referred to as the "Plan"), and to continue participation in the Plan year after year.

16.      Specifically, National Benefits Network, Inc., under Bruce Ivol and Scott Ivol's direction, developed the Plan, drafted the Plan documents, with, upon information and belief, the assistance of Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company.  National Benefits Network, Inc. also solicited the participation of Bruce Ivol and Scott Ivol by sending marketing materials and negotiating deals by which these entities would be compensated for their role in the Plan.

17.      Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company devised the policies to be used in Plan and allowed their policies to be used to fund the Plan.

18.      Bruce Ivol and Scot Ivol sold Plaintiff into the Plan.  Bruce Ivol and Scott Ivol transmitted the insurance applications for the insurance companies and assisted in the billing and collection of premiums for the insurance companies.

19.      All Defendants conspired together to defraud Plaintiff into participating in the Plan so that each could have his/its slice of the pie; as such, all Defendants are jointly and severally liable for Plaintiff's damages.

20.      All Defendants were engaged in a conspiracy to commit the tortious acts complained of and therefore every Defendant is liable for all of Plaintiff's damages.

## II.
## JURISDICTION AND VENUE

21.      Subject matter jurisdiction is properly vested in this Court.

22.      This Court also has personal jurisdiction, both general and specific, over Defendants.  Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Pennsylvania, have entered into contracts with Pennsylvania residents relating to the transactions at issue in this case, have engaged in substantial business transactions with Pennsylvania residents in connection with Plaintiff's investment and as such, are subject to personal jurisdiction in this State.  All Defendants have: (a) contracted by mail or otherwise with Pennsylvania companies or Pennsylvania residents, which contracts were to be performed in whole or in part in Pennsylvania; (b) Defendants committed torts, which are the subject of this action, in whole or in part in Pennsylvania; and (c) otherwise transacted business in Pennsylvania.  All of the insurance companies contracted with Bruce Ivol and/or Scott Ivol and appointed him as their agent to sell the policies to fund the Plan.

23.      Plaintiff is not making a claim or cause of action which pertains to a federal question.  ERISA has no application to the claims brought by Plaintiff in state court.  The causes of action Plaintiff asserts are predominantly pre-investment fraud type claims and such claims

are no preempted by ERISA.  Plaintiff is not seeking to recover benefits due under the terms of the Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan.  Rather, Plaintiff complains about the misrepresentations and omissions that induced Plaintiff into initially participating in the Plan and continuing to invest in the Plan year after year.

24.     Venue is proper in Allegheny County pursuant to Pennsylvania Rule of Civil Procedure §1006 because Allegheny County is the county where Defendant National Benefits Network, Inc., Scott Ivol Financial Group, LLC, and Scott C. Ivol may be served and where a substantial part of the events giving rise to the claims occurred.

25.     Venue is proper in Allegheny County, Pennsylvania as to all Defendants pursuant to Pennsylvania Rule of Civil Procedure §1006 because venue is proper in Allegheny County, as to at least one Defendant, and all claims and actions arise out of the same series of transactions and occurrences.

### III.
### NATURE OF ACTION

26.     This case involves a complex and copiously designed insurance scam that finds its genesis and nexus with the Defendants.  Individually and through their agents, Defendants branch out to unsuspecting victims that are trying to plan for their future retirement and con them into purchasing life insurance products disguised as legitimate investment opportunities and quasi-retirement plans.  The result is that the insurance agents receive extremely high, front loaded commissions on the insurance scams purported to be investment products, while the victims are left with no investment return and a battle with the IRS due to the illegitimacy of the investment products from the beginning.  Here, Plaintiff is a hardworking, self-employed individual who owns his own business.

27.    As Plaintiff's business continued to prosper, he started thinking about efficient ways to begin saving for retirement.  Unlike many individuals, Plaintiff did not have access to company retirement plans because he is self-employed.  Plaintiff also knew that the social security system was unlikely adequate to provide for his post retirement needs.  Plaintiff had heard of 401k plans, IRAs and similar approved plans, but Plaintiff realized that as a self-employed individual, he would need expert assistance in navigating the morass of information applicable to establishing and maintaining a retirement plan.  Therefore, Plaintiff sought the advice of those who purported to have expertise in these areas.  For Plaintiff, this was Bruce Ivol and Scott Ivol.

28.    Plaintiff was instructed that retirement plans existed that could be established under various sections of the Internal Revenue Code with one such plan being a 412(i) plan.   Plaintiff was also told that some of the biggest insurance and retirement planning companies in the world had worked with certain 412(i) plans to develop insurance products that could meet his needs and be used in these plans to (1) secure retirement needs by generating guaranteed rates of return on the investment and (2) facilitate favorable tax savings. Plaintiff was told that (1) his investment was safe specifically because the funding vehicles were being managed by solid, longstanding insurance companies; and (2) he could rest assured that the benefits of the Plan were all legitimate since it had been thoroughly reviewed and approved by the Defendants to ensure the Plan was in compliance with the applicable laws.

29.    Unfortunately for Plaintiff, his purported investment was not legitimate because Defendants perverted the 412(i) provisions of the Internal Revenue Code in an effort to avoid the limitations that the IRS places on retirement savings, the reason being that such limitations would make these types of plans harder to sell.  Defendants promoted the perverted plans so they could generate substantial life insurance sales and fees for administering and designing such plans.  The 412(i) plans were no more than well-drafted sales gimmicks used by Defendants to

disguise what was really happening –that Plaintiff was duped into buying large life insurance policies with excessive mortality and expense charges that he would otherwise have never purchased.  Plaintiff was led to believe that 100% of his money was immediately being put to work to generate the minimum guaranteed returns promised, and hopefully even greater returns based on the market, as suggested by Defendants.  In truth, a substantial portion of Plaintiff's initial investment to each insurance product was paid to the sales agents, Bruce Ivol and Scott Ivol.  Such substantial sales commissions tainted the financial advisors with a conflict of interest that was never adequately disclosed to Plaintiff.

30.   Not only was Plaintiff misled to believe that his contributions would continue to grow, he was also told that said contributions were legitimate business deductions pursuant to the Internal Revenue Code.  However, the applicable code Section 162 of the Internal Revenue Code limits business deductions to those that are ordinary and necessary.  This provision of the Internal Revenue Code has been in existence since the Code was created and applies to any retirement plan.  While there are other limitations applicable to business deductions for contributions to retirement plans, all such contributions must be an ordinary and necessary business expense to be tax deductible.  If a person simply contributes money from his business to a retirement plan with no corresponding business reason, then the contribution is considered a non-deductible dividend that cannot be deducted by the business, and therefore must be included as income by the business owner.  Despite this overriding limitation of retirement plan contributions, Defendants simply ignored this provision and instead focused exclusively on other Internal Revenue Code provisions, and their warped interpretation thereof, to justify the purported tax benefits being touted to Plaintiff.

31.   Plaintiff was told that there were no limitations on the amount of money that he could contribute to his "retirement" plan.  Plaintiff was told that because insurance policies were being used as the investment vehicle, he could withdraw money from the plan tax free by taking

policy loans that would never have to be repaid.  All of these purported tax benefits were illusory in that they never really existed.  And IRC 162 was an overriding limitation to the tax deductibility of the retirement plan contributions that was simply ignored by the Defendants when selling the plan to Plaintiff.

32.   There is nothing new or surprising about the 412(i) plans as they have been in existence since the 1970's.  A legitimate 412(i) plan is known as a defined benefit pension plan funded with a combination of life insurance policies and annuities.  The 412(i) plan is adopted and sponsored by small business owners because it relieves the owners of the burden of hiring an actuary to manage the plan's funding levels. Such plans can only be funded via fully guaranteed annuities or a combination of annuities and life insurance.  A 4l2(i) plan is a defined benefit pension plan created under Section 412(i) of the Internal Revenue Code (the "Code").[1]  Like any defined benefit pension plan, a 4l2(i) plan provides certain retirement and death benefits to its participants and must contain assets sufficient to pay those benefits.  Code section 412(i) and the Treasury Regulations provide specific requirements that dictate how annuities and life insurance may fund the plan.

33.   To create a 412(i) plan, an employer first adopts a plan document and then establishes a trust to hold the plan's assets, and the trust uses employer contributions to purchase and maintain some combination of life insurance policies *and* annuities for the 412(i) plan. Treasury Regulations prohibit a pension plan from providing any benefits – such as death benefits – that are more than "incidental" to the retirement benefits under the plan.  Otherwise, it is no longer a retirement plan, but an insurance plan.[2]

34.   The employer funds the 4l2(i) plan by making regular cash contributions to the trust at least equal to the amount of the premiums due on the insurance policies and annuities, and the

---

[1] Section 412(i) was recodified as 26 U.S.C. § 412(e)(3) in the 2006 amendments to the Code.
[2] Treas. Reg. § J.401-1(b)(I)(i).

Code allows the employer to take a tax deduction in the amount of these contributions.  As the plan participants retire, revenue stream from the insurance pays the specified retirement benefit to plan participants.

35.    Scams involving 412(i) plans have been prevalent since Defendants first began marketing the plans.  Promoters for 412(i) pension plans trained its agents, in this case Bruce Ivol and Scott Ivol, to mislead Plaintiff by providing false marketing for the plans that represented the plans as a legitimate tax-deductible retirement plan with benefits that include (1) tax deferred earnings; (2) larger contributions than traditional plans; (3) availability of short-term tax-free loans against the policy that did not have to be repaid; and (4) the ability to buy the insurance policy out of the plan without causing a prohibited transaction and incurring excise tax liability.  Defendants shared in extremely high commissions at the expense of Plaintiff.   In addition, Defendants failed to comply with non-discrimination laws by promoting the plans only to the highest compensated employees (i.e. Plaintiff and his family members). Despite regulations, Defendants ensured that the plans were funded entirely by certain types of life insurance policies that contained a feature that suppressed the cash value of the policies in the early years. This caused the unsuspecting consumers of the 412(i) plans to  defraud the IRS of income tax, because the type of insurance policy allowed removal of a large portion of the funds in the plan on a pre-tax basis. In response to these scams, the IRS deemed the plans to be abusive tax shelters in 2004 and made participation in a 412(i) plan a listed transaction, requiring consumers who had a 412(i) plan to report this fact to the IRS by filing a Form 8886. There is no doubt that Defendants were familiar with the IRS regulations that governed the 412(i) plans and chose to turn a blind eye.  There is no doubt that Defendants had legal compliance departments and attorneys determine that the Plan had features that made them non-compliant under sections 412(i) and 162.  Finally, there is no doubt that Defendants actively participated in the design of a type of life insurance policy that would facilitate the marketing of the 412(i) plan; maximize

commission payments to insurance agents; and further the large contribution/tax avoidance nature of the 412(i) arrangement in a manner that was not apparent to the consumer.

36.     Interestingly, one of the selling points of the 412(i) plan is that large nationally-known insurance companies guarantee all benefits. The fact is that 412(i) plans have long been under attack by the IRS because insurance companies were overfunding them with "springing cash value" policies, like the one used in this case. Defendants were well aware of the risk of the 412(i) plans for the consumers.  Defendants strategically trained its agents, such as Bruce Ivol and Scott Ivol, to sell the Plan, but ignore the risk.  Defendants provided the marketing materials to sell the scam and used its insurance policies to fund the scam.  None of the materials depicted any level of risk for the consumers, only benefits.  Because Plaintiff had no prior knowledge of how 412(i) plans worked, he relied on the representations of Bruce Ivol and Scott Ivol.  Knowing that Plaintiff was new to 412(i) plans, Defendants kept very strict control over the Plan and its documents, showing Plaintiff only what they wanted him to see.  Plaintiff was wrongfully instructed that it was perfectly legal for 100% of the premiums he paid into the Plan to be deducted as a business expense.   The reality of the investment is that Plaintiff will never see a return on his investment, he has lost his retirement benefits; and he has been left with an IRS audit that resulted in Plaintiff paying back taxes, penalties, and interest caused by the defective 412(i) plan created and sold by the Defendants.  The scam was perpetuated because nobody informed Plaintiff that the entire plan was a listed transaction that warranted special tax preparation.  The reality is that Defendants worked together to dupe Plaintiff into participating in a seemingly qualified 412(i) Plan that, in reality, was overfunded.  Also, from its inception, the 412(i) Plan sold to Plaintiff violated the benefits rights and features requirements of the Internal Revenue Code and was considered by the IRS to be deferred compensation rather than tax deductible premiums.  The fact is the 412(i) plan sold to Plaintiff was never compliant with the Internal Revenue Code from the very day it was created.  Moreover, from its inception, the Plan

had the following disqualification defects that were known to the Defendants, but were unknown to Plaintiff:

    a.    Failure to include individuals who are employees or members of a controlled group of corporations—and therefore failure to adhere to minimum participation requirements and rules prohibiting discrimination in favor of highly compensated employees [Code §§ 401(a)(3), 401(a)(4), 414];

    b.    Discrimination in benefits, rights and features in violation of Code section 401(a)(4) because non-highly compensated employees do not have life insurance they only have annuities funding benefits;

    c.    Failure to fund the Plan within maximum funding and contribution limitations set by Code sections 404, 412, and 415 because the accelerated cost structure of the life insurance policies results in the making and deduction of excess contributions;

    d.    Failure to follow the Code provisions applicable to Code section 412(i) (now Code section 412(e)(3)) which requires level contributions and that proceeds from annuities and insurance match the benefit value at normal retirement age; and

    e.    Failure to follow the incidental death benefit limitations as stated in relevant Revenue Rulings.

Clearly, from its inception the Plan was not a valid and compliant 412(i) plan and was a "listed transaction", and the Defendants knew, or should have known, that Plaintiff's Plan had the above referenced defects because they sold and funded the Plan knowing the parameters of the IRS rules, rulings, and regulations.

    37.    Plaintiff brings this action to recover for the misrepresentations and omissions and deceptive conduct that initially induced him into participating in the investment and to continue participating in such investment year after year.

## IV.   FACTS

### A.   Bruce Ivol and Scott Ivol's involvement

    38.    Plaintiff's childhood friend, Scott Dougherty, referred Plaintiff to an insurance agent named Matt Folio to assist him in purchasing a life insurance policy. Matt Folio told Plaintiff that he needed to meet with Bruce Ivol, who Matt described as one of the leading

experts in the 412(i) arena.  Matt told Plaintiff that Bruce could help him build a massive retirement while saving on the amount of taxes he paid.  Plaintiff decided to meet with Bruce to see what types of retirement options he had.

39.     Shortly thereafter, in or around late December, 2005, Plaintiff met with Bruce Ivol and Scott Ivol at Bruce Ivol's office on McMurray Road.  Bruce Ivol and Scott Ivol, individually and on behalf of National Benefits Network, Inc., boasted that they could establish a financial plan for Plaintiff and manage his portfolio by assisting with investment and retirement plans that would allow Plaintiff to accomplish his primary goal – which was to ensure and secure his family's financial well-being.  Bruce and Scott Ivol offered a review of Plaintiff's financial worth, investment and retirement goals, and insurance products.

40.     During this meeting, Bruce Ivol and Scott Ivol touted their skills, training, expertise and credentials in both insurance and investment plans to Plaintiff.  Bruce Ivol explained that he had a 412(i) plan – the Plan – that would accomplish all of Plaintiff's retirement goals in a tax-advantaged way.   Bruce Ivol and Scott Ivol presented themselves as experts in the 412(i) arena.  As a result of this meeting, Plaintiff engaged Bruce Ivol and Scott Ivol to be his financial advisors. Bruce Ivol and Scott Ivol encouraged Plaintiff to rely upon their advice and counsel, and to trust them to achieve his financial and retirement goals.  Plaintiff did so, even to the extent of delegating investment decisions to Bruce and Scott Ivol.

41.     From late 2005 on, Plaintiff viewed Defendants Bruce Ivol and Scott Ivol, individually and on behalf of National Benefits Network, Inc. (and from 2016 on, Scott Ivol Financial Group, LLC) as his trusted financial advisors – his fiduciaries.  Plaintiff trusted Bruce Ivol and Scott Ivol, not only with his money, but with his family's financial well-being.  Plaintiff depended on Bruce Ivol and Scott Ivol's advice so that he would have the ability to provide for his family in the years to come.

42.     During the initial meeting in late 2005 and multiple phone calls thereafter, Bruce Ivol and Scott Ivol solicited Plaintiff's participation in the Plan.  During their presentation of the Plan, Bruce Ivol and Scott Ivol represented to Plaintiff that the Plan had the following benefits and features:

a.     The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;

b.     The contributions to the Plan are 100% tax deductible;

c.     The Plan was a safe investment;

d.     The Plan was compliant with the Internal Revenue Code and IRS regulations and had been approved by the IRS;

e.     The investment in the Plan was guaranteed to grow at a minimum rate of 3%; and

f.     Plaintiff could access his investment through loans that would allow him to withdraw his money tax-free.

43.     The general course of the face-to face meeting and all subsequent telephone conversations with Bruce Ivol and Scott Ivol was that if Bruce Ivol said something or made a representation, Scott Ivol would then confirm exactly what Bruce Ivol had said.  If Scott Ivol said something or made a representation, Bruce Ivol would then confirm exactly what Scott Ivol had said.  Both Bruce Ivol and Scott Ivol spoke through the whole sales process – both seemed to be well-versed, not only in financial planning and estate planning, but in 412(i) plans specifically, and Bruce Ivol specifically held himself out to be experts in the Plan.  Plaintiff relied on Bruce Ivol and Scott Ivol's self-proclaimed expertise.

44.     As a result of Bruce Ivol and Scott Ivol's representations and omissions (described more thoroughly below), Plaintiff entered into the Plan, with an effective date of January 1, 2005.   Bruce Ivol and Scott Ivol sold a Massachusetts Mutual Life Insurance Company ("MassMutual") annuity to the Max Feldman Defined Benefit Pension Plan – the Plan

- with Plaintiff being the annuitant.  From January 1, 2005 until approximately October, 2008, this MassMutual annuity was the sole investment vehicle utilized to fund the Plan.  From the date the policy was issued until 2018, Plaintiff contributed over $1.2 million dollars to this annuity.

45.    Unbeknownst to Plaintiff, in or around October, 2008, under the guise of making some changes that would benefit Plaintiff's Plan and ultimate retirement goals, Bruce Ivol and Scott Ivol began advising Plaintiff to surrender certain policies and purchase new policies that offered larger investment returns.

46.    Over the time span of 2008 through 2018, Bruce Ivol and Scott Ivol convinced Plaintiff to make surrender multiple policies and purchase new policies, for the sole purpose of generating commissions and fees for themselves, and ultimately forcing Plaintiff to lose money because of substantial surrender fees.  These transactions were not only completely unsuitable for Plaintiff's objectives and needs but also presented a huge conflict of interest.

47.  These transactions included annuities and life insurance policies purchased from the following entities:

a.    MONY Life Insurance Company – from 2005 until 2009 (over $260,000.00);

b.    Talcott Resolution Life and Annuity Insurance Company (formerly The Hartford) – from 2008 until 2018 (over $1.4 million);

b.    Allianz Life Insurance Company of North America – from 2009 until 2014 (nearly $1.04 million);

c.    Jackson National Life Insurance Company – from 2011 until 2018 (over $2.16 million);

d.    Brighthouse Life Insurance Company (formerly MetLife) – from 2014 until 2018 (nearly $140,000.00); and

e.    Massachusetts Mutual Life Insurance Company – from 2006 until 2018 (nearly $1.2 million).

48.    Bruce Ivol and Scott Ivol knew or should have known that the Plan was being used to commit fraud and generate substantial life insurance and annuity sales when they sold it to Plaintiff and they knowingly planned for and accepted their commissions from the sale of the Plan.

49.    In addition to the affirmative misrepresentations that Bruce Ivol and Scott Ivol made to Plaintiff regarding the Plan, and as further evidence of their intent to deceive Plaintiff, Defendants Bruce Ivol and Scott Ivol knew of the following material facts and intentionally failed to disclose to Plaintiff, *inter alia*, the following material facts:

- That a substantial percentage of the money invested by Plaintiff was used to pay their exorbitant commissions and that virtually all of the money invested during the first year of purchase of the insurance product was immediately lost because of this;

- That the Plan would be funded with certain types of policies and annuities which in turn would cause scrutiny of the Plan by the IRS;

- The insurance was being paid for by Plaintiff – *but owned by the Plan*;

- That Plaintiff was only legally able to fund only sufficient insurance to provide an incidental death benefit as defined by the Treasury Regulations;

- That the Plan was a highly risky investment for Plaintiff;

- That Plaintiff's investment in the defective Plan would virtually guarantee that he would be audited by the IRS, that he would incur substantial expenses in defending the audit and that he would ultimately lose the audit and not only have to pay taxes on the sums previously invested, but also interest and penalties;

- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction for the contribution into these types of plans;

- That the IRS viewed these types of plans as "listed transactions;"

- That for decades the courts have supported the position of the IRS

21

that contributions to 412(i) plans are not ordinary and necessary business expenses deductible under IRC §162;

• That the federal tax authorities prevent an employer from sponsoring a benefit plan with the pre-conceived intention of terminating the Plan;

• That contribution made to these type of plans are deemed disguised (constructive) distributions of income that are not deductible by the company and that must also be reported as income by the individual recipients; and

• That Plaintiff would in all reasonable likelihood never achieve the economic results as represented during the sale.

50.   As financial advisors with self-proclaimed expertise in the area of 412(i) plans, Bruce Ivol and Scott Ivol knew the IRS' position on 412(i) plans.   They knew all of the facts in the above paragraph and they intentionally did not disclose them to Plaintiff.   They knew the IRS' position on 412(i) plans was unfavorable and that the IRS would, in all reasonable probability, determine that the Plan was a "listed transaction."   Defendants Bruce Ivol and Scott Ivol knew that 412(i) plans posed substantial tax risks to Plaintiff and were considered extremely aggressive.   Bruce Ivol and Scott Ivol knew that the tax deduction on the contributions were limited to Section 162.   They knew that up to 90% of the first year contribution of any insurance product would be paid as commissions. Thus, Bruce Ivol and Scott Ivol intentionally deceived Plaintiff by actively promoting and encouraging Plaintiff's participation in the Plan, while egregiously omitting the significant tax risks associated with such a plan.   Furthermore, Bruce Ivol and Scott Ivol intentionally failed to disclose the Section 162 limits and high front end commission to Plaintiff because, had he made those disclosures, Plaintiff would never have invested in the Plan or continued to invest in the Plan year after year.   Plaintiff relied on the intentional oral and written misrepresentations of Bruce Ivol and Scott Ivol and invested in the Plan to his detriment and continued to invest in the Plan year after year.

**B.     The Involvement of the Various Insurers**

51.     Long before Plaintiff's involvement in the Plan, various insurance companies, including Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, began to devise ways to exploit IRC sections in order to sell life insurance that would otherwise not be purchased.  Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, a had been involved in various 412(i) plans prior to its involvement with the Plan.

52.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company were well aware of the IRS' scrutiny and audits on defined benefit plans that purport to allow the insured to invest hundreds of thousands of dollars on a tax-deductible basis with the ability to then access the funds during retirement by purchasing the policy or distributing the policy and then withdrawing the cash value built up in the policy through tax free loans.

53.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company had been involved in numerous other defined benefit plans that came under scrutiny for the same reasons the Plan did – attempting to deduct the contributions to a plan funded by whole, universal or variable policies that exceed the cost of term life insurance.

54.     The Plan required that insurance products be purchased to fund the plan.  The lure of profits was enough to make Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, players in the Plan.

55.     Upon information and belief, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company reviewed the Plan documents before allowing its insurance products to be used to fund the Plan.

56.     Upon information and belief, after communications with Bruce Ivol and Scott Ivol, individually and on behalf of National Benefits Network, Inc. (and later Scott Ivol Financial Group, LLC) Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company's advanced marketing groups approved the use of their insurance products to fund the Plan.

57.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew and approved of Bruce Ivol and Scott Ivol acting as its agents on the life insurance sales to Plaintiff for his participation in the Plan.

58.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life

Insurance Company knew that Bruce Ivol and Scott Ivol sold its life insurance products to fund the Plan; Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company further knew that Bruce Ivol and Scott Ivol used their  position as Plaintiff's trusted advisors or fiduciaries to facilitate such life insurance product sales and advocated this practice.

59.      Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company provided Bruce Ivol and Scott Ivol with illustrations that showed, not only the death benefit, but the growth, interest rate and the accumulated cash value of the insurance products, respectively, over the course of many years.  Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company's agents, Bruce Ivol and Scott Ivol, used these illustrations to explain to Plaintiff that these illustrations were indicative of how his investment would perform if they invested in the Plan.

60.      Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company paid Bruce Ivol and Scott Ivol commissions on the sale of life insurance products to Plaintiff.

61.      In addition to being vicariously liable for the actions of their agents, Bruce Ivol and Scott Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson

National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company owed independent duties to Plaintiff, including ensuring that the products sold to him was suitable for his needs and desires.

62.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew that their policies, when used in connection with defined benefit plans, were not suitable for any investor as the investment risks and tax risks were too high; however, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company made no effort to correct the affirmative misrepresentations that their agents made to Plaintiff, even though they knew that such representations were false.

63.     As further evidence of Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company's intent to deceive Plaintiff, these insurers knew the following material facts and intentionally failed to disclose to Plaintiff, *inter alia*, the following material facts:

- That a substantial percentage of the money invested by Plaintiff was used to pay their exorbitant commissions and that virtually all of the money invested during the first year of the purchase of any insurance product was immediately lost because of this;

- That the Plan would be funded with certain types of policies and annuities which in turn would cause scrutiny of the Plan by the IRS;

- The insurance was being paid for by Plaintiff – *but owned by the*

*Plan*;

- That Plaintiff was only legally able to fund only sufficient insurance to provide an incidental death benefit as defined by the Treasury Regulations;

- That the Plan was a highly risky investment for Plaintiff;

- That Plaintiff's investment in the defective Plan would virtually guarantee that he would be audited by the IRS, that he would incur substantial expenses in defending the audit and that he would ultimately lose the audit and not only have to pay taxes on the sums previously invested, but also interest and penalties;

- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction for the contribution into these types of plans;

- That the IRS viewed these types of plans as "listed transactions;"

- That for decades the courts have supported the position of the IRS that contributions to 412(i) plans are not ordinary and necessary business expenses deductible under IRC §162;

- That the federal tax authorities prevent an employer from sponsoring a benefit plan with the pre-conceived intention of terminating the Plan;

- That contribution made to these type of plans are deemed disguised (constructive) distributions of income that are not deductible by the company and that must also be reported as income by the individual recipients; and

- That Plaintiff would in all reasonable likelihood never achieve the economic results as represented during the sale.

64.   As insurance companies actively involved with 412(i) plans, and, specifically, the

Plan, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity

Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life

Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance

Company knew of the IRS' position on 412(i) plans.  They knew all of the facts in the paragraph above and they intentionally did not disclose them to Plaintiff.

65.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew that Plaintiff's tax deductions on his contributions to the Plan were limited by IRC §162; IRC §162 limits deductions to reasonable and necessary business expenses, and the IRS has consistently held that the cost of providing death benefits to employees is limited to the cost of term insurance acquired for a legitimate business reason.

66.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew that the individual employees must claim as income any amount paid as contributions to the Plan that exceeded the cost of term life insurance, as required by IRC 404; yet Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company did not correct the representations made by their agents, Bruce Ivol and Scott Ivol.

67.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew that the Plan posed substantial investment and tax risks Plaintiff and was considered an extremely aggressive investment.

68.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson

National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company knew that between 90% and 110% of Plaintiff's first year contribution to the purchase of any insurance product would be paid as commissions to their agents, Bruce Ivol and Scott Ivol.

69.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company intentionally deceived Plaintiff by actively promoting and encouraging their sales agents to solicit his participation in the Plan, while egregiously omitting the significant investment risks and tax risks associated with such plan.

70.     Furthermore, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company intentionally failed to disclose the Section 162 limits and high front end commission to Plaintiff because, had they made those disclosures, Plaintiff would never had invested into the Plan.

71.     Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company was well aware that the Plan was being used to commit fraud and generate substantial life insurance sales, yet they knowingly issued polices to the Plan and accepted premiums on the policies.

72.     As further evidence of Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and

MONY Life Insurance Company's intent to deceive Plaintiff, these insurers sought to insulate themselves from the anticipated liability by creating disclaimer statements hidden in policy documents that contained statements that were contrary to the very sales presentations that these insurers knew their sales agents were making in order to secure the sale of their insurance products.

73.     Plaintiff relied on the intentional oral and written misrepresentations and the intentional omissions of Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company and their agents and initially invested and continued investing in the Plan to his detriment.   Plaintiff suffered ascertainable loss as a result of Defendant's deceptive, misleading and/or confusing conduct.

**C.     The Fall Out**

74.   As  a result of having been induced into the Plan, through the misrepresentations and omissions and deceptive conduct of Defendants, Plaintiff has suffered damages.  In addition to the contributions to the Plan of nearly $6.8 million, Plaintiff also suffered losses because of having to retain accountants, counsel, tax counsel, tax attorneys, and pay in excess of $98,000.00 in professional fees to fight the IRS audit and terminate his 412(i) plan.  In addition to the contribution and professional fees, other damages incurred by Plaintiff include but are not limited to the following:

    a.      Lost investment opportunity;

    b.      Cost of life insurance they would not have purchased, but for his purchase of the Plan based on the Defendants' misrepresentations and omissions;

    c.      Administration costs associated with adoption and operation of the Plan; and

> d.      Adverse tax consequences, including back taxes, penalties, and interest, for participating in a "listed transaction."

75.    Defendants represented to Plaintiff that all his transactions had the blessing of the IRS.  In truth, and unbeknownst to Plaintiff, the 412(i) Plan was not a legitimate transaction in the eyes of the IRS.

76.    On March 2, 2020, the IRS made the following assessment against Plaintiff: 1) back taxes against Max Feldman in the amount of $1,059,694.00; 2) accuracy-related penalties against Max Feldman in the amount of $211,938.80; and 3) interest against Max Feldman in the amount of $68,475.88.   On October 9, 2020, the parties agreed to enter into a closing agreement to conclude the IRS examination.  As part of this Closing Agreement, (1) the Plan is terminated as of September 4, 2020 and all Plan assets are to be distributed; (2) effective January 1, 2005, the Plan is not qualified under Code section 401(a) and its related trust is not exempt under Code Section 501(a); and (3) any distributions from the Plan as a part of the Plan termination are not eligible to be rolled over into a retirement plan that is qualified under Code Section 401(a) or into an IRA.

77.    Absent Defendants' misrepresentations and omissions, Plaintiff could have invested over $6.5 million into legitimate retirement plans, achieved legitimate tax benefits, and made a substantial return on the investment.  In addition, the failure of this investment and the tax consequences associated with it, along with the exposure to the IRS, has caused Plaintiff to suffer mental anguish.

**D.     Discovery Rule/Fraudulent Concealment Doctrine**

78.    Plaintiff hereby affirmatively pleads the discovery rule and would show that Plaintiff's claims are not barred by limitations and accrued only when Plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the facts giving rise to his causes of

action. This suit is brought within two years of when Plaintiff knew or should have known of the existence of the causes of action described above.

79.     Defendants' false, misleading, and/or deceptive acts or practices related to a variety of complex legal and/or tax issues, which were well beyond the knowledge and understanding of Plaintiff. For that reason, Plaintiff reasonably and justifiably relied on the advice and expertise of Defendants.

80.     In addition, Defendants fraudulently concealed their wrongdoing from Plaintiff. Despite having actual knowledge that they had engaged in false, misleading, and/or deceptive acts or practices, Defendants concealed their wrongdoing from Plaintiff by making misrepresentations and/or by remaining silent when they had a duty to disclose such wrongdoing to Plaintiff.

81.     Defendants had a fixed purpose to conceal their wrongdoing in that by doing so Plaintiff would not discover the inherent conflict that existed between achieving Plaintiff's retirement goals versus fulfilling Defendant's self-interests.

82.     Plaintiff did not discover that Defendants had engaged in the false, misleading, or deceptive acts or practices set forth above until long after their improper conduct began, specifically when Plaintiff received the IRS' assessment on March 2, 2020, nor should Plaintiff have discovered such acts or practices prior to that time. A cause of action does not accrue until there is an injury. *Erdely v. Hinchcliffe & Keener, Inc.*, 875 A.2d 1078, 1085 (Pa. Super 2005). In cases involving IRS assessments, the injury does not occur until the IRS assesses a greater tax. *Hill v. Laventhol & Horwath,* 29 Pa. D. & C.3d 227, 231 (Pa. C.P. 1983). The statute cannot begin to run until notice had been given by the IRS. *Id.* at 232. The liability imposed by this notice becomes injury which forms the plaintiff's cause of action. *Id.* (citing Chisolm v. Scott et al., 86 N.M. 707, 526 P.2d 1300, 1302 (Pa. 1974) (holding that a taxpayer does not owe a tax deficiency until the IRS renders its assessment in written notice to the taxpayer)).

## V.   CAUSES OF ACTION

### COUNT 1:  FRAUD AND/OR CONSTRUCTIVE FRAUD
### (Plaintiff against All Defendants)

83.   Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

84.   Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, individually and through their agents, and in conspiracy with one another, and aiding and abetting each other knowingly made false representations to or concealed material facts from Plaintiff with the intention that Plaintiff rely thereon in transacting his business affairs.

85.   Defendants, and each of them, sold an investment to Plaintiff based on fraudulent representations as to the nature of the investment as described above. Defendants made (1) representations; (2) the representations were false; (3) Defendants knew they were false; (4) the representations were made with the intent to deceive; and (5) the plaintiff justifiably relied on the representations, which resulted in damages. Specifically, with respect to the Plan sold to Plaintiff, Defendants intentionally made or caused to be made, *inter alia*, the following material misrepresentations or misleading statements to Plaintiff:

> a.   The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;
>
> b.   The contributions to the Plan are 100% tax deductible;
>
> c.   The Plan was a safe investment;
>
> d.   The Plan was compliant with the Internal Revenue Code and IRS regulations and had been approved by the IRS;

    e.    The investment in the Plan was guaranteed to grow at a minimum rate of return of 3%; and

    f.    Plaintiff could access his investment through loans that would allow him to withdraw his money tax-free.

86.    However, Defendants were aware of the falsity of the above misrepresentations and knew that the IRS was scrutinizing these types of plans, thus they were not a low-risk retirement investment as Defendants represented them to be.

87.    Alternatively, Defendants made these representations and omissions as a positive assertion, recklessly, without any knowledge of their truth, and with a conscious disregard of the rights and interests of Plaintiff, and for the purpose of enriching themselves and jeopardizing the financial well-being of Plaintiff. Defendants acted maliciously, oppressively, and with the intent to defraud Plaintiff. Defendants made these misrepresentations with the intention that they should be acted upon by Plaintiff. Plaintiff acted in reliance upon Defendants' misrepresentations and thereby suffered injury.

88.    Defendants owed Plaintiff a duty to act as a reasonable and prudent insurance agent, financial advisor, insurance advisor, and/or insurer would act under the same or similar circumstances.  The relationship between Defendants, whether as an insurance agent, financial advisor, insurance advisor, and/or insurer, imposed a duty to speak instead of remaining silent. The insurers, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, as well as National Benefits Network, Inc., and Scott Ivol Financial Group, LLC, are independently liable for their own respective actions as well as vicariously liable for the actions of its agents, employees, and/or representatives, including Bruce Ivol and Scott Ivol.

Defendants intentionally failed to disclose, *inter alia,* the following material facts to Plaintiff, as well as the others described above:

a. That a substantial percentage of the money invested by Plaintiff was used to pay their exorbitant commissions and that virtually all of the money invested during the first year of the purchase of any insurance product was immediately lost because of this;

b. That the Plan would be funded with certain types of policies and annuities which in turn would cause scrutiny of the Plan by the IRS;

c. The insurance was being paid for by Plaintiff – *but owned by the Plan*;

d. That Plaintiff was only legally able to fund only sufficient insurance to provide an incidental death benefit as defined by the Treasury Regulations;

e. That the Plan was a highly risky investment for Plaintiff;

f. That Plaintiff's investment in the defective Plan would virtually guarantee that he would be audited by the IRS, that he would incur substantial expenses in defending the audit and that he would ultimately lose the audit and not only have to pay taxes on the sums previously invested, but also interest and penalties;

g. That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction for the contribution into these types of plans;

h. That the IRS viewed these types of plans as "listed transactions;"

i. That for decades the courts have supported the position of the IRS that contributions to 412(i) plans are not ordinary and necessary business expenses deductible under IRC §162;

j. That the federal tax authorities prevent an employer from sponsoring a benefit plan with the pre-conceived intention of terminating the Plan;

k. That contributions made to these types of plans are deemed disguised (constructive) distributions of income that are not deductible by the company and that must also be reported as income by the individual recipients; and

l. That Plaintiff would in all reasonable likelihood never achieve the economic results as represented during the sale.

89.     Additionally, Defendants Bruce Ivol, Scott Ivol, National Benefits Network and Scott Ivol Financial Group were Plaintiff's trusted financial advisors – Plaintiff's fiduciaries. Defendants Bruce Ivol, Scott Ivol, National Benefits Network and Scott Ivol Financial Group owed certain fiduciary duties to Plaintiff – including but not limited to, the duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing (which extends to dealings with those whose interest are closely identified with those of the fiduciary), duty of full disclosure, and duty to act with integrity of the strictest kind.  Defendants Bruce Ivol, Scott Ivol, National Benefits Network and Scott Ivol Financial Group concealed or failed to disclose the material facts which they had a duty to disclose.

90.     Plaintiff relied on Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company's misrepresentations and  omissions when making his decision to initially participate in the Plan and to continue to stay in the Plan each year thereafter.  Plaintiff also relied on each of these misrepresentations and omissions with respect to the maintenance of his Plan and the IRS reporting requirements regarding the Plan.

91.     The conduct of Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, amd MONY Life Insurance Companyas set forth herein, constitutes fraud thereby causing Plaintiff damages for which he now sues.

92.     Plaintiff brings suit against Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott

Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, for fraud and/or constructive fraud and seeks to recover the following damages:   (1) actual damages (which include contributions paid to the Plan, administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to the IRS resulting from Plaintiff's participation in the Plan, CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) punitive or exemplary damages; (7) attorney's fees (as the same legal services are being used for the prosecution of other claims that permit the recovery of attorney fees); and (8) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

### COUNT 2:  NEGLIGENT MISREPRESENTATION
### (Plaintiff against All Defendants)

93.    Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

94.    In the alternative if the same is necessary, Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, individually and through their agents, and in conspiracy with one another, aided and abetted one another in negligently making false representations to Plaintiff with the intention that Plaintiff rely thereon in entering into the Plan and continuing to stay in the Plan.  Defendants (1) made assertions of untrue facts; (2) which Defendants represented that they believed to be true; (3) with the lack of a reasonable ground for

that belief; (4) Defendants intended to induce Plaintiff's reliance upon the representations; (5) Plaintiff justifiably relied upon the representations; and (6) that resulted in damages for which Plaintiff now sues.

95.    Defendants, and each of them, sold an investment based on false representations as described above.  Defendants, and each of them, concealed material facts and thereby misled Plaintiff as described above. The conduct of Defendants, as set forth herein, constitutes negligent misrepresentation thereby causing Plaintiff damages for which he now sues.

96.    Defendants did not exercise reasonable care or competence in obtaining or communicating the information contained in these false representations.  Plaintiff justifiably relied on each of these representations and omissions by the Defendants.  If Plaintiff had been told the truth, he would not have participated in the investment.  Plaintiff would have invested in a legitimate retirement plan that provided the desired tax savings.

97.    The negligent misrepresentations by the Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company proximately caused the damages suffered by Plaintiff.

98.    Plaintiff brings suit against Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company for negligent misrepresentation and seeks to recover the following damages:   (1) actual damages (which include contributions paid to the Plan, administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to

the IRS resulting from Plaintiff's participation in the Plan, CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) exemplary damages; and (7) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

## COUNT 3:  BREACH OF FIDUCIARY DUTY
### (Plaintiff against All Defendants)

99.   Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

100.  All Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, owed Plaintiff a fiduciary duty to recommend a suitable investment that met Plaintiff's investment objectives and to keep Plaintiff apprised of all relevant facts relating to his investment in the 412(i) plan.  Defendants breached both common law and statutory fiduciary duties to Plaintiff by a) recommending that Plaintiff participate in the 412(i) plan, even though it was not suitable for his investment objectives and involved an excessive amount of insurance; b) making the above-described misrepresentations and omissions; c) misrepresenting the tax consequences of the 412(i) plan; d) failing to disclose the tax risks associated with the 412(i) plan; and e) failing to disclose Bruce Ivol and Scott Ivol's inherent conflict in recommending that Plaintiff's invest in a plan that will pay them a sizeable commission for Plaintiff's participation.  Defendants' breaches of their fiduciary duties are a producing cause of Plaintiff's damages.

101.   Additionally, a special relationship of trust and confidence existed between Plaintiff and Defendants Bruce Ivol and Scott Ivol as Plaintiff had engaged them to act as Plaintiff's trusted financial advisors.  As Plaintiff's trusted financial advisors, Bruce Ivol and Scott Ivol owed Plaintiff a fiduciary duty to recommend a suitable investment that met Plaintiff's investment objectives and to keep Plaintiff apprised of all relevant facts relating to his investment in the Plan.  In addition to the breaches alleged against all Defendants, Defendants Bruce Ivol and Scott Ivol owed certain fiduciary duties to Plaintiff – including but not limited to, the duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing (which extends to dealings with those whose interest are closely identified with those of the fiduciary, including National Benefits Network and Scott Ivol Financial Group, LLC), duty of full disclosure, and duty to act with integrity of the strictest kind.  Defendants Bruce Ivol and Scott Ivol breached those fiduciary duties by making the misrepresentations and omissions outlined in Plaintiff's fraud cause of action.

102.   Plaintiff brings suit against Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, to recover damages for the following items: (1) actual damages (which include contributions paid to the Plan, administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to the IRS resulting from Plaintiff's participation in the Plan, and CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) exemplary damages; and (7) attorney's fees (as the same legal services are being used for the prosecution of other claims that permit the recovery of attorney fees); and (8) such other

and further items of damages as may be supplemented as a result of the discovery performed in this suit.

## COUNT 4:  NEGLIGENCE
### (Plaintiff against All Defendants)

103.  Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

104.  As described herein, and in the alternative if the same be necessary, Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, individually and through their agents, were negligent.  Defendants owed Plaintiff a duty to act as a reasonable and prudent insurance agent, financial advisor, insurance advisor, and/or insurer.  Defendants breached their duty by making the above-referenced representations and omissions.  Defendants' breach proximately caused the occurrences in question and Plaintiff's damages.

105.  Defendants represented to Plaintiff that they had special expertise regarding 412(i) plans.   Plaintiff, in turn, justifiably relied upon Defendants to provide him with advice and services related to 412(i) plans and the tax deductions associated with such plans.

106.  Defendants owed Plaintiff a duty to perform these services in a manner conforming to the professional standards of care applicable to insurance agents, financial advisors, insurance advisors, and/or insurers.

107.  Defendants negligently failed to adhere to these professional standards in, *inter alia*, the following ways:

a) Having insufficient expertise in §412(i) plans to accurately analyze the structure of the investment in order to determine whether, in reasonable probability, tax deductions for contributions into the Plan would be allowed by the IRS;

b) Accepting representations about the character and operation of the Plan without performing their own adequate investigation of the Plan;

c) Recommending that Plaintiff invest in the Plan when they knew or should have known that they lacked the expertise/information about 412(i) plans to make an informed decision about the merits of the Plan;

d) Failing to adequately advise Plaintiff of the substantial tax and investment risk associated with investing in the Plan;

e) Failing to adequately perform, inform, and/or disclose an independent analysis or due diligence regarding the propriety or viability of the Plan or the suitability of the insurance policies that were used to fund the Plan;

f) Failing to adequately perform, inform, and/or disclose an independent analysis or due diligence regarding whether the 412(i) Plan that was marketed to Plaintiff was in compliance with the applicable sections of the Internal Revenue Code;

g) Failing to adequately review the IRS announcements, notices, and statements regarding 412(i) plans, or the use of life insurance policies to fund such plans;

h) Representing that the Plan marketed to Plaintiff was in compliance with the applicable sections of the Internal Revenue Code;

i) Failing to adequately perform, inform, and/or disclose an adequate independent analysis or due diligence regarding whether the contributions to the Plan were tax deductible;

j) Representing that the contributions to the Plan were tax deductible;

k) Failing to adequately disclose the known risks related to the Plan that they marketed to Plaintiff;

l) Failing to disclose to Plaintiff the significant commissions that agents/financial advisors were earning with respect to the insurance products sold to Plaintiff;

42

m) Failing to adequately disclose that there were significant tax risks associated with funding the Plan with certain insurance products;

n) Failing to adequately disclose that Plaintiff's investment in the 412(i) Plan would virtually guarantee that they would be audited by the IRS, that they would incur substantial expense in defending the audit and that they would ultimately lose the audit and not only have to pay taxes on the sums previously invested, but also interest and penalties;

o) Failing to adequately disclose that professional advisors for certain Defendants had expressly warned them about such risks and advised them not to market these insurance policies for use in a 412(i) plan;

p) Failing to adequately disclose that the Plan was likely to be deemed abusive by the IRS; and

q) Failing to adequately disclose that the IRS had issued numerous announcements and notices over the years addressing many of the same characteristics of this Plan and explaining that such characteristics are contrary to federal tax laws and regulations.

108.  As a direct and proximate cause of Defendants' negligence, Plaintiff participated and invested in the Plan.  As a direct and proximate result of his participation in the Plan and Defendants' negligence, Plaintiff has suffered damages.

109.  Therefore, Plaintiff brings suit against Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company for negligence and seeks to recover the following damages:   (1) actual damages (which include contributions paid to the Plan, administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to

the IRS resulting from Plaintiff's participation in the Plan, CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) exemplary damages; and (7) attorney's fees (as the same legal services are being used for the prosecution of other claims that permit the recovery of attorney fees); and (8) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

### COUNT 5.  UNJUST ENRICHMENT
**(By Plaintiff against All Defendants)**

110.  Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

111. Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, obtained funds and profits from Plaintiff by fraud perpetrated by the Defendants and the taking of undue advantage of Plaintiff in the manner described above. Defendants' conduct gives rise to a cause of action on behalf of Plaintiff under the equitable remedy of unjust enrichment, which cause of action is hereby stated.

112.  Therefore, Plaintiff brings suit against Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company for unjust enrichment and seeks to recover the following damages:   (1) actual damages (which include contributions paid to the Plan,

administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to the IRS resulting from Plaintiff's participation in the Plan, CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) exemplary damages; and (7) attorney's fees (as the same legal services are being used for the prosecution of other claims that permit the recovery of attorney fees); and (8) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

**COUNT 6:  MONEY HAD AND RECEIVED**
**(By Plaintiff against All Defendants)**

113.  Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

114.  Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, obtained money from Plaintiff which in equity and good conscience belongs to Plaintiff.  Said actions of Defendants give rise to a cause of action on behalf of Plaintiff under the equitable theory of money had and received, which cause of action is hereby stated.

115.  Therefore, Plaintiff brings suit against Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company for money had and received and seeks to

recover the following damages:  (1) actual damages (which include contributions paid to the Plan, administrative fees paid to the Plan, back taxes, accuracy-related penalties, and interest owed to the IRS resulting from Plaintiff's participation in the Plan, CPA fees, attorney fees, and other professional fees associated with the IRS audit, and loss of investment income); (2) disgorgement of Defendants' profits; (3) mental anguish damages; (4) prejudgment and post-judgment interest; (5) costs of court; (6) exemplary damages; and (7) attorney's fees (as the same legal services are being used for the prosecution of other claims that permit the recovery of attorney fees); and (8) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

**COUNT 7:  VIOLATION OF THE UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(By Plaintiff against All Defendants)**

116.  Plaintiff repeats the allegations of the preceding paragraphs as if set forth herein at length.

117.    The conduct of Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, as alleged herein is in violation of Title 40 of the Pennsylvania Statutes thereby giving rise to a claim under the Unfair Insurance Practices Act, and thus also giving rise to a claim under the Unfair Trade Practices and Consumer Protection Law. Said violations are a producing cause of the Plaintiff's damages.

118.    Specifically, Defendants National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY

Life Insurance Company's misrepresentations violate the Unfair Insurance Practices Act in the following respects:

    a. Defendants misrepresented, and thus did not fully disclose, the terms, benefits or advantages of the insurance in violation of the Unfair Insurance Practices Act § 1171.5(a)(1)(i).

    b. Defendants made, or directly or indirectly caused to be made, a representation or statement with respect to insurance that was untrue, deceptive or misleading in violation of the Unfair Insurance Practices Act § 1171.5(a)(2).

    c. Defendants made, or directly or indirectly caused to be made, and circulated statements that were untrue for the purpose of tending to induce the forfeiture, exchange or conversion of an insurance policy in violation of the Unfair Insurance Practices Act § 1171.5(a)(1)(vi).

    d. Defendants made, or directly or indirectly caused to be made, false or fraudulent statements or representations relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money or other benefit from any insurers, agent, or individual in violation of the Unfair Insurance Practices Act § 1171.5(a)(10).

119. Additionally, Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company violated § 201-3 of the Unfair Trade Practices and Consumer Protection Law by engaging in unfair methods of competition and unfair or deceptive acts or practices in the following respects:

    a. Defendants passed off the sale of exorbitant amounts of life insurance as legitimate ways to save for retirement in a tax-advantaged way in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(i).

    b. Defendants made false or fraudulent statements or representations which caused the likelihood of confusion or of misunderstanding as to the approval of the tax advantages of the Plan in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(ii).

    c. Defendants made false or fraudulent statements or representations which caused the likelihood of confusion or of misunderstanding as the affiliation,

connection or association with, or certification by, another as it relates to the Plan in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(iii).

d.  Defendants made false or fraudulent statements or representations which represented that the Plan had characteristics, uses or benefits that it did not actually have in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(v).

e.  Defendants made false or fraudulent statements or representations which represented that the Plan was of a particular standard or quality, more specifically that the Plan was approved and in compliance with applicable sections of the Internal Revenue Code, when it was actually the opposite, in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(vii).

f.  Defendants engaged in fraudulent and deceptive conduct which created a likelihood of confusion and misunderstanding by Plaintiff in violation of the Unfair Trade Practices and Consumer Protection Law § 201-2(4)(xxi).

Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, committed all of the violations cited above individually, and acting as an agent of the insurers, and in conjunction with the other Defendants.

120.    Plaintiff brings suit against Defendants, National Benefits Network, Inc., Scott Ivol Financial Group, LLC, Scott C. Ivol, Massachusetts Mutual Life Insurance Company, Talcott Resolution Life and Annuity Insurance Company, Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, Brighthouse Life Insurance Company, and MONY Life Insurance Company, for violations of the Unfair Trade Practices and Consumer Protection Law and seek to recover the following damages:  (1) disgorgement of Defendants' profits; (2) prejudgment and post-judgment interest; (3) costs of court; (4) attorney's fees as allowed by Section 9.2 of the UTPCPL; and (5) such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

121.    Additionally, Plaintiff further sues for trebling of the damages for all violations of the Unfair Trade Practices and Consumer Protection Law as discussed throughout the paragraphs above by all Defendants against Plaintiff, and alleges that all of Defendants' misrepresentations as described herein were committed "recklessly" and/or "knowingly," in that Defendants had actual awareness, at the time of the acts complained of, of the falsity, deception or unfairness of the conduct in question, thereby entitling the jury to award Plaintiff three times his actual damages as additional damages under § 201-9.2(a) of the Unfair Trade Practices and Consumer Protection Law for violations committed by all Defendants for which a cause of action for violations of the Unfair Trade Practices and Consumer Protection Law have been alleged in this complaint.

## JURY DEMAND

122.    In accordance with Rule 1007.1 of the Pennsylvania Rules of Civil Procedure, Plaintiff demands a trial by jury.  A jury fee is being paid simultaneously with this filing.

## PRAYER

123.    Plaintiff prays that Defendants be cited to appear and answer herein and that they recover all relief requested herein upon final trial hereof.

**JURY TRIAL IS DEMANDED.**

Dated:  February 22, 2021                          Respectfully submitted,

                                                   */s/ Robert M. Barnes*
                                                   Robert M. Barnes, Esq.
                                                   MARCUS & SHAPIRA, LLP
                                                   301 Grant Street, 35th Floor
                                                   Pittsburgh, PA  15219
                                                   Telephone:  (412) 471-3490
                                                   Fax:  (412) 391-2315
                                                   rbarnes@marcus-shapira.com

                                                   Laura R. Sherry, Esq.
                                                   *Pro Hac Vice Admission Pending*
                                                   The Harris Firm
                                                   5050 West Lovers Lane
                                                   Dallas, TX  75209

Telephone: (214) 956-7474
Fax:  (214) 956-7405
laura@harrisfirmpc.com

***Counsel for Plaintiff***

## **VERIFICATION**

I, Max C. Feldman, verify that the statements made in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge, information and belief.

I understand that this verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Date: 2/22/21

Max C. Feldman

A1536683.6

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  Max C. Feldman, Individually and as Trustee on behalf of the Max C. Feldman Defined Benefit Pension Plan

Signature:  */s/ Robert M. Barnes*

Name:  Robert M. Barnes

Attorney No. (if applicable):  58655